**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-01303-SBP

STEPHANIE BALDYGA,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER,
MARC-LUCA CONLEY, a Denver Police Officer,
KODI OLSON, a Denver Police Officer,
FRANCES E. SIMONET, County Court Judge for the City and County of Denver, and
HAYLEY SWESTKA, Assistant City Attorney for the City and County of Denver,

      Defendants.

---

### ORDER GRANTING MOTION TO DISMISS AND MOTION TO STRIKE

---

**Susan Prose, United States Magistrate Judge**

      Plaintiff Stephanie Baldyga brings this action against defendants, the City and County of Denver ("the City"), Denver Police Officers Marc-Luca Conley and Kodi Olson (together, "the Officers"), County Court Judge Frances E. Simonet, and Deputy District Attorney ("DDA") Hayley Swestka. *See generally* Amended Complaint, ECF No. 5 ("Am. Compl."). This matter is before the court on the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by the City, the Officers, and Judge Simonet (collectively, "Moving Defendants"),[1] Motion to Dismiss, ECF No. 13 ("Motion"). Ms. Baldyga responded, ECF No. 20 ("Response"), the

---

[1] Although Ms. Baldyga filed this action on May 9, 2024, she has yet to file an executed return or waiver of summons as to DDA Swestka. Additionally, the court observes that the time for service under Federal Rule of Civil Procedure 4(m) has long passed.

Moving Defendants replied, ECF No. 21 ("Reply"), and thereafter Ms. Baldyga filed what amounts to a sur-reply, ECF No. 23 ("Proposed Sur-Reply") that the Moving Defendants ask the court to strike, Motion to Strike Plaintiff's Sur-Reply, ECF No. 26 ("Motion to Strike").

All parties who have been served, entered an appearance, and are affected by this Order have consented to the jurisdiction of a United States magistrate judge.[2] Consent Form, ECF No. 28; Order of Reference, ECF No. 29. The court therefore issues this Order and resolves the pending motions pursuant to its authority under 28 U.S.C. § 636(c) to "conduct any or all proceedings" and D.C.COLO.LCivR 72.3(a), (b). Having carefully reviewed the Motions, the associated briefing, and applicable law, the court concludes that oral argument will not materially assist in the resolution of this matter. For the reasons below, the court **GRANTS** the Motion to Dismiss and Motion to Strike.

## BACKGROUND

### I.  Ms. Baldyga's Factual Allegations

On a motion to dismiss for failure to state a claim under Rule 12 (b)(6), a court is limited

---

[2] Because Ms. Baldyga has not served DDA Swestka, and because the Tenth Circuit has not yet decided whether the presence of an unserved defendant affects the consent of the served parties, and other circuits are split, *see, e.g.*, *Elide Fire USA Corp. v. Auto Fire Guard, LLC*, No. 21-cv-00943-NYW, 2022 WL 672485, at *6-7 (D. Colo. Mar. 7, 2022), *recommendation adopted*, No. 21-cv-00943-WJM-NYW, 2022 WL 2287527 (D. Colo. Apr. 18, 2022), this court takes the cautious approach of treating the consent of Ms. Baldyga and the Moving Defendants as a consent to rule on the Motion to Dismiss and Motion to Strike. D.C.COLO.LCivR 72.3(a), (b); *see also Burton v. Schamp*, 25 F.4th 198, 209 & n.43 (3d Cir. 2022) ("[W]e read Section 636(c)(1)'s reference to the *consent* by the 'parties' to require the *consent* by any party directly affected by an order or a judgment issued by that magistrate judge[,]" and noting that "[n]o consent from a defendant is necessary where a plaintiff has failed to effect service on the defendant in the time prescribed by Fed. R. Civ. P. 4(m).") (emphasis in original).

2

to considering the factual allegations in the operative complaint—here, the Amended Complaint, ECF No. 5—and any documents susceptible to judicial notice. *See Turner v. Garcia-Serna*, No. 20-cv-00281-CMA-KMT, 2021 WL 1186670, at *4 (D. Colo. Mar. 30, 2021) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). The Amended Complaint contains relatively few factual allegations, however, the court has identified the well-pleaded facts and recounts them as follows.

On or around 9:30 p.m. on Saturday, December 9, 2023, an "alleged victim" called 911 requesting law enforcement's help with what is referred to as a "civil assist" to gather the victim's belongings from the home. Am. Compl. at 8. On or about 10:00 p.m., the Officers responded to the 911 call and spoke with the alleged victim, who told them that Ms. Baldyga had been physically violent. *Id.* Ms. Baldyga submits that the victim had "no injuries, no factual evidence, and vague details on what had supposedly occurred." *Id.* The extent of the Officers' investigation is unclear, however, that evening, the Officers arrested Ms. Baldyga without an arrest warrant on charges of assault and "wrongs to minors." *Id.*

Ms. Baldyga asserts that the Officers lacked probable cause to arrest her and illegally arrested and searched her inside her home. *See, e.g.*, *id.* at 8, 14. She alleges that she refused to step out of her door and outside her home and told the Officers "multiple times" that she did not consent to them entering her home. *Id.* at 14. Despite this, she claims that the Officers "proceeded to state [that she] was under arrest" and "forc[ed] their way" into her home to effectuate her arrest. *Id.* Moreover, Ms. Baldyga claims that the Officers lied on the police report by indicating the arrest type as "On-View," *id.* at 8, and "conveyed false information by marking the charges as unclassified in the arrest report, when it was clear that she did not appear to be

violent, which could constitute a lower severity charge classification." *Id.* at 13 (cleaned up). She further alleges that the Officers falsely claimed to have served her with a copy of the summons and complaint. *Id.*

The following day, Ms. Baldyga was formally charged in *People v. Stephanie M. Baldyga*, Denver County Court Case No. 23GS010469 (the "Criminal Case"), the docket sheet of which the court takes judicial notice.[3] Am. Compl. at 8. Ms. Baldyga raises multiple allegations regarding the actions of Judge Simonet and DDA Swestka in proceedings during the Criminal Case. First, she maintains that Judge Simonet "spoke for" DDA Swestka and stated that "they intended on following through with the charges." *Id.* Based on this perceived misconduct, Ms. Baldyga filed a complaint with "OIM,"[4] but, according to her, OIM did not conduct a meaningful investigation before it closed the case. *Id.*

Ms. Baldyga also asserts that DDA Swestka "provide[d] no response" to her "counterclaims" in the Criminal Case, *id.*, and "tried to admit improperly served documents, evidence collected illegally, and 404b character evidence" in the Criminal Case, *id.* at 10 (cleaned up). As to Judge Simonet, Ms. Baldyga generally describes how the Judge "continu[ed] a case without the essential elements required to prosecute," *id.*; assessed a $25 dollar fee as a condition of requesting a jury trial, *id.* at 10-11; set the Criminal Case last on the docket,

---

[3] The court takes judicial notice of the docket sheet in the Criminal Case as a matter of public record in the Denver County Court. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (holding that a court may take judicial notice of facts which are a matter of public record); *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 n.2 (10th Cir. 2014) (noting that a court may "take judicial notice of documents and docket materials filed in other courts") (citation omitted).

[4] Ms. Baldyga does not specify who or what "OIM" is, but the court presumes that she is referring to the City's Office of the Independent Monitor.

requiring Ms. Baldyga to wait more than an hour-and-a-half in the courtroom, *id.* at 12; "blatantly ignored and disregarded all [of Ms. Baldyga's] questions, counterclaims, and inquiries," *id.*; threatened to hold Ms. Baldyga in contempt of court, *id.*; and generally "ignored" Ms. Baldyga's constitutional rights, *id.* Additionally, Ms. Baldyga claims that Judge Simonet was "illegally hearing" the Criminal Case because she had not taken the proper oath after starting a new term. *Id.* at 8.

## II.    Ms. Baldyga's Legal Claims

Based on the facts above, Ms. Baldyga brings forty-seven separately numbered claims for relief under various federal and state laws. For most of her claims, Ms. Baldyga cites laws and regulations that do not support private causes of action, as the court will discuss below.

However, Ms. Baldyga does invoke the Fourth Amendment and claims that the Officers unlawfully arrested her without probable cause and without a warrant, falsely arrested and imprisoned her, forcing her to be away from her then-six-month-old baby, and unlawfully searched her or her home. *See* Am. Compl. at 8, 14. She also alleges that the Officers falsified the arrest report and otherwise conveyed false information in connection with her arrest. *Id.* at 13.

Ms. Baldyga seeks monetary damages of $5,908,475. *Id.* at 28. She also requests that the Officers, DDA Swestka, and Judge Simonet have their employment terminated immediately, that they be "held responsible civilly or criminally," and that they be "barred from holding any type of Legal License or Certification, that would allow them to work for a governmental/law enforcement agency." *Id.*

### III. Pending Motions and Associated Briefing

***Motion to Dismiss.*** The Moving Defendants seek dismissal of all claims against them under Rule 12(b)(6).[5] They argue that the Amended Complaint should be dismissed for several reasons, including that (1) several of the laws cited by Ms. Baldyga are inapplicable to them, (2) Judge Simonet is entitled to absolute judicial immunity on all claims against her, (3) the Officers are shielded by qualified immunity, (4) Ms. Baldyga did not comply with the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-101 *et seq.*, and (5) several claims are too indefinite and vague to answer. *See generally* Motion.

Ms. Baldyga opposes the Motion, arguing that while she cites inapplicable laws in many instances, her "biggest complaints and issues stated are regarding the illegal trespassing, illegal arrest, illegal search and seizure, perjury on a federal arrest report, illegal imprisonment, illegal operation of the judges bench invalidating the entire case, malicious prosecution, and The City and County of Denver is negligent due to being the Agency all of the Government Departments in violation fall under." Response at 11.

Defendants filed their Reply, and two days later, Ms. Baldyga filed a sur-reply without seeking leave. Proposed Sur-Reply; *see also* Exhibit List, ECF No. 24 (attaching additional supporting documents).

***Motion to Strike.*** Defendants have moved to strike Ms. Baldyga's sur-reply because she did not seek the court's leave before filing it, *see* Motion to Strike, and Ms. Baldyga did not respond. Local Rule 7.1 contemplates only a motion, response, and reply; it does not authorize

---

[5] The Motion to Dismiss alternatively requests that the court require Ms. Baldyga to provide a more definite statement. *See* Motion at 1.

any further filings on a motion. The court also notes that Ms. Baldyga has already filed a thirty-page response, and the Moving Defendants' Reply does not raise any new issues that would justify a sur-reply. *See Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 276 (D. Colo. 2022) ("A district court must permit a sur-reply where it relies on new materials—i.e., new evidence or new legal argument—raised in a reply brief.") (citation and internal quotation marks omitted). Therefore, the Motion to Strike is **GRANTED**. Accordingly, the court has not considered the Proposed Sur-Reply or documents filed at ECF No. 24.

> ***Submitted Materials Outside the Amended Complaint.*** In support of their Motion to Dismiss, the Moving Defendants filed, as conventionally submitted material, the video footage from the Officers' body-worn cameras on the night of Ms. Baldyga's arrest. *See* Notice, ECF No. 14. Ms. Baldyga did not submit materials outside the Amended Complaint as part of her Response to the Motion. She did, however, submit various documents, an audio recording of the 911 call, as well as her own copies of bodycam footage around the same time that she filed her Motion for Entry of Default, ECF No. 15, which was denied by the Clerk of Court. ECF No. 16.

> In evaluating the present Motion to Dismiss, the court respectfully declines any invitation to consider the bodycam footage or other materials filed by the parties that are not attached to, or otherwise incorporated in, the Amended Complaint. As another court in this District recognized, there is no authority *requiring* a court to consider video footage on a motion to dismiss, *Turner*, 2021 WL 1186670, at *5-6; rather, a court may elect whether or not to consider such evidence. *See id.* at *5 (citing *Myers v. Brewer*, 773 F. App'x 1032, 1035 n.2 (10th Cir. 2019) ("Because this case was decided on a Rule 12(b)(6) motion, . . . [the court] **may** consider audio and video

recordings taken from the responding officers' body cameras[.]") (emphasis in original, citations omitted)).

Several reasons lead the court to this conclusion. First, Defendants notably do not articulate the legal justification for allowing the court to review the video footage in deciding a Rule 12(b)(6) motion. It is well-established that "[g]enerally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). The limited exceptions to that restriction—"(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice," *see id.* (cleaned up)—do not appear to encompass the materials appended to the Motion.

Second, the court's "function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sodaro v. City & Cnty. of Denver*, 629 F. Supp. 3d 1064, 1073 (D. Colo. 2022) (quoting *Gilchrist v. City*, 71 F. App'x 1, 2-3 (10th Cir. 2003) (internal quotation marks omitted)). As a result, when presented with a Rule 12(b)(6) motion, "video evidence should only be considered if it 'clearly contradict[s] the allegations in the complaint.'" *Id.* (quoting *Myers*, 773 F. App'x at 1036). Given Ms. Baldyga's sparse factual allegations, the court finds little utility in combing the video footage and documents to search for contradictions to the few factual allegations found in the Amended Complaint.

Third, when a court receives and intends to consider materials outside the complaint, "it

may convert a Rule 12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status and the nonmovant responded by supplying its own extrinsic evidence." *Turner*, 2021 WL 1186670, at *4 (citing *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004)). Here, the court has not notified the parties that it planned to consider matters outside Ms. Baldyga's Amended Complaint. While Ms. Baldyga has filed additional materials herself—albeit never explicitly in connection with the Motion to Dismiss—out of an abundance of caution, and in deference to Ms. Baldyga's pro se status, the court will limit its evaluation of the Motion to the factual allegations in the Amended Complaint.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making this determination, the "court accepts as true all well pleaded factual allegations in a complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. But "a

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (internal quotation marks omitted, quoting *Twombly*, 550 U.S. at 556), *reh'g en banc denied*, 83 F.4th 1251 (10th Cir. 2023).

This court is mindful that Ms. Baldyga proceeds pro se and thus affords her filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the court cannot and does not act as her advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Ms. Baldyga as to a represented party. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *see also Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("*Pro se* status 'does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'") (citation omitted).

## ANALYSIS

Drilling down on the precise factual and legal underpinning for Ms. Baldyga's claims—in light of the 47 distinct claims for relief, and Ms. Baldyga's broad invocation of the various statutes, regulations, and constitutional provisions—is somewhat challenging. *Cf. Snyder v. ACORD Corp.*, No. 14-cv-01736-JLK, 2016 WL 192270, at *3 (D. Colo. Jan. 2016) (recognizing that "[t]his type of shotgun pleading, which forces the Defendants and the Court to wade through hundreds of paragraphs of factual allegations in search of those that are alleged to support the various elements of 23 distinct claims for relief, violates Rule 8," but proceeding to evaluate the merits of a motion to dismiss under Rule 12(b)(6)). Nevertheless, the court has carefully evaluated the Amended Complaint and evaluates each claim brought against the Moving

Defendants.

First, the court addresses claims that do not authorize a private right of action or are otherwise not legally cognizable. Second, the court evaluates Ms. Baldyga's state law claims. Third, the court analyzes the claims against Judge Simonet and considers whether she is entitled to absolute judicial immunity on those claims. Fourth, the court assesses the federal claims against the Officers brought under 42 U.S.C. § 1983. Finally, the court addresses whether the Amended Complaint sufficiently alleges a municipal liability claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), against the Officers in their official capacities and the City.

## I.      Claims Lacking a Private Right of Action or Otherwise Not Legally Cognizable

Ms. Baldyga brings several dozen claims under statutes or other sources of federal law that fail to state a claim upon which relief may be granted because the provision cited by Ms. Baldyga either (1) does not provide a private right of action, (2) does not confer any substantive rights, and therefore is not legally cognizable, or (3) both. *See* Am. Compl. at Claims 1-4, 8-41, 43 ("Miscellaneous Claims").

<u>*First*</u>, the claims asserting violations of federal criminal statutes found in Title 18 of the United States Code cannot support a civil claim as these provisions do not create a private right of action. *Id.* at Claims 12-19, 21-30, 32, 34, 35, and 41; *LaHue v. Smith*, No. 23-cv-2141-HLT-ADM, 2023 WL 5959832, at *3 (D. Kan. Aug. 22, 2023), *recommendation adopted*, No. 23-cv-02141-HLT-ADM, 2023 WL 5952017 (D. Kan. Sept. 13, 2023) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.") (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568

(1979) (internal quotation marks omitted)); *see also id.* ("[T]he Tenth Circuit has affirmed district court dismissals of claims under Title 18 on the grounds that the criminal statutes do not provide for a private right of action.") (citing *Allen v. Adams*, No. 21-3208, 2022 WL 680336, at *3 (10th Cir. Mar. 8, 2022) (citing *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007))).

<u>Second</u>, Ms. Baldyga brings multiple claims for violations of federal statutes that pertain to matters completely unrelated to the civil rights violations she alleges here. *See* Am. Compl. at Claim 20 (22 U.S.C. § 6725, which concerns inspections of chemical weapons storage facilities); *id.* at Claim 31 (26 U.S.C. § 7213, authorizing criminal penalties for violating the tax code); *id.* at Claim 33 (15 U.S.C. § 694b, providing authority for the Small Business Administration to require a surety bond); *id.* at Claim 36 (28 U.S.C. § 455, describing the disqualification of a federal judge or magistrate judge); *id.* at 37 (38 C.F.R. § 75.113, a regulation from the Department of Veterans Affairs defining what constitutes a "data breach"); *id.* at Claim 38 (10 C.F.R. § 2.304, setting forth requirements for documents and signatures filed with the Nuclear Regulatory Commission); *id.* at Claim 39 (25 C.F.R. § 11.404, Bureau of Indian Affairs regulation defining the misdemeanor of false imprisonment for purposes of Courts of Indian Offenses); *id.* at Claim 40 (19 U.S.C. § 1592, authorizing penalties for fraud, gross negligence, and negligence in connection with the Tariff Act of 1930).

<u>Third</u>, Ms. Baldyga cites several sources of law that do not supply substantive rights. Her first claim asserts rights under the Articles of Confederation which was superseded when the states ratified the United States Constitution. *See* Am. Compl. at Claim 1. Additionally, her claim under the Ninth Amendment does not implicate substantive rights. *Id.* at Claim 9; *see Holmes v. Town of Silver City*, 826 F. App'x 678, 681-82 (10th Cir. 2020) ("The Ninth Amendment is not

an independent source of individual rights; rather, it provides a rule of construction that we apply in certain cases.") (citation and internal quotation marks omitted). So, too, her claims under Articles III and VI of the Constitution and the Tenth Amendment. Am. Compl. at Claims 2, 4, 10.

*Fourth*, Ms. Baldyga claims violations of constitutional and statutory provisions that, while providing substantive rights, are wholly unrelated to the rights implicated by her factual allegations here. She claims violations of both Privileges and Immunity Clauses, U.S. Const. art. IV § 2, amend. XIV § 1, but the first clause concerns actions by the federal government, whereas the second clause has been limited to situations concerning the ability of a citizen of one state to become a citizen of another state and to enjoy the privileges and immunities thereof. *See generally, e.g.*, *Saenz v. Roe*, 526 U.S. 489, 503-04 (1999) (citing *Slaughter-House Cases*, 16 Wall. 36, 21 L.Ed. 394 (1872)). She also asserts that the Officers violated Rule 4 of Colorado's Rules of *Civil* Procedure. Am. Compl. at Claim 43. Whatever rights Colorado's Rules of Civil Procedure may provide, they clearly have no bearing on whether Ms. Baldyga's rights in connection with her *criminal* case were violated. Lastly, her claim under the Seventh Amendment fails, first because the provision addresses the right to a jury trial in a *civil* case and, second, because that amendment does not apply to the states. *Id.* at Claim 8; *Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 217 (1916) ("[T]he 7th Amendment applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regulate trials by jury in state courts . . . ."); *see McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 765 n.13 (2010).

For these reasons, there is no doubt that Ms. Baldyga cannot plead a plausible claim for relief based on any of the foregoing legal theories. Under Rule 12(b)(6), courts generally dismiss

claims with prejudice when it is "'patently obvious that the plaintiff could not prevail on the facts alleged and allowing her an opportunity to amend her complaint would be futile.'" *Seale v. Peacock*, 32 F.4th 1011, 1029 (10th Cir. 2022) (quoting *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014)). Here, the Miscellaneous Claims are entirely without legal support. The Miscellaneous Claims are therefore **dismissed with prejudice and without leave to amend**.

## II.     State Law Claims

Ms. Baldyga brings multiple claims under Colorado law against the Moving Defendants. Am. Compl. at Claims 44-47. Each of these claims fails for the additional reason that Ms. Baldyga has not alleged that she complied with the notice requirement of the CGIA.

The CGIA provides that "a public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant," subject to waiver for certain categories of injuries. Colo. Rev. Stat. § 24-10-106(1). Even if a waiver applies, a claimant must file a written notice within 182 days of the date of the discovery of the injury to pursue a claim against a Colorado governmental entity or public employee. The notice is a jurisdictional prerequisite to suit. *See* § 24-10-109(1) ("Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action."); *see also* § 24-10-118(1)(a) (applying the notice requirements to actions against public employees). And, as relevant here, "[t]he statutory notice provisions of the CGIA apply when federal courts hear Colorado tort claims under supplemental jurisdiction." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003) (citation omitted). Thus, failure to

comply with the CGIA's notice provisions deprives the court of subject matter jurisdiction over Ms. Baldyga's state law claims against the Moving Defendants. *See, e.g.*, *Mesa Cnty. Valley Sch. Dist. No. 51 v. Kelsey*, 8 P.3d 1200, 1206 (Colo. 2000) (citing *E. Lakewood Sanitation Dist. v. Dist. Ct.*, 842 P.2d 233, 236 (Colo. 1992)); *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924 (Colo. 1993).

Ms. Baldyga has not alleged, nor has she otherwise shown, that she complied with the CGIA, including her obligation to give notice in writing within 182 days after the date of the discovery of the injury. "Colorado courts consistently hold that a plaintiff *must plead* compliance with the CGIA's notice provisions in the complaint to avoid dismissal." *Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 840 (10th Cir. 2003) (collecting cases) (emphasis added), *abrogated on other grounds by Martinez v. Est. of Bleck*, 379 P.3d 315 (Colo. 2016); *see also Tafoya v. Limon Corr. Facility*, No. 20-cv-0768-WJM-NRN, 2020 WL 6565230, at *3 (D. Colo. Nov. 9, 2020) ("[A] claimant must allege in his or her complaint that the claimant has complied with the jurisdictional prerequisite of filing of a notice of claim.") (quoting *Kratzer v. Colo. Intergovernmental Risk Share Agency*, 18 P.3d 766, 769 (Colo. App. 2000) (internal quotation marks omitted)).

Having failed to allege in the Amended Complaint, or to otherwise demonstrate, that she "complied with the jurisdictional prerequisite of filing of a notice of claim," *see Tafoya*, 2020 WL 6565230, at *3, Ms. Baldyga's state-law claims against the Moving Defendants must be dismissed for lack of subject-matter jurisdiction. Accordingly, all such claims are **dismissed without prejudice and with leave to amend**. *See Aspen Orthopaedics*, 353 F.3d at 842; *see also, e.g.*, *Moaz v. City & Cnty. of Denver*, No. 17-cv-00030-MSK-NYW, 2017 WL 6381688,

at *4 (D. Colo. Dec. 14, 2017) (holding that CGIA grants "sovereign immunity" as to tort claims and such claims are "dismissed for lack of subject matter jurisdiction").

## III.    Federal Claims Against Judge Simonet

### A.    Individual-Capacity Claims

The Moving Defendants argue that the claims against Judge Simonet are barred by the doctrine of absolute judicial immunity. *See* Motion at 5-7, 12-13. The court respectfully agrees.

"Judicial immunity applies only to personal capacity claims." *See, e.g.*, *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156 (10th Cir. 2011). Whether absolute immunity is available is generally a question of law, and the party asserting the defense has the burden of demonstrating its applicability. *See Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.") (citations omitted); *see also Forrester v. White*, 484 U.S. 219, 224 (1988) (officials who "seek exemption from personal liability" on the basis of absolute immunity bear "the burden of showing that such an exemption is justified by overriding considerations of public policy").

"'The rationale for according absolute immunity in the civil rights context is to incorporate traditional common law immunities and to allow functionaries in the judicial system the latitude to perform their tasks absent the threat of retaliatory § 1983 litigation.'" *Collins v. Daniels*, 916 F.3d 1302, 1318 (10th Cir. 2019) (quoting *Snell v. Tunnell*, 920 F.2d 673, 686-87 (10th Cir. 1990)). Put simply, "absolute immunity is necessary so that judges can perform their functions without harassment or intimidation." *Van Sickle v. Holloway*, 791 F.2d 1431, 1435 (10th Cir. 1986). And "[l]ike other forms of official immunity, judicial immunity is an immunity

from suit, not just from [the] ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* (citations omitted). Indeed, "immunity applies even when the judge is accused of acting maliciously or corruptly." *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

There are just two exceptions to the broad coverage of the judicial immunity doctrine: "(1) when the act is not taken in the judge's judicial capacity, and (2) when the act, though judicial in nature, is taken in the complete absence of all jurisdiction." *Stein v. Disciplinary Bd. of the Sup. Ct.*, 520 F.3d 1183, 1195 (10th Cir. 2008) (cleaned up). Based on the well-pleaded facts in the Amended Complaint, the court finds that neither exception applies here.

As to the first exception, Ms. Baldyga has not plausibly alleged any actions undertaken by Judge Simonet that were not fundamentally judicial in nature. She variously claims that Judge Simonet:

- Should not have allowed the Criminal Case to proceed;
- Spoke on behalf of the prosecuting attorney;
- Did not properly sign documents filed in the Criminal Case;
- Required Ms. Baldyga to wait an hour and a half to be heard;
- Threatened to find Ms. Baldyga in contempt for disagreeing with her rulings;
- Violated the right to a jury trial because the County Court imposes a fee of $25 to request a jury trial;
- Refused to recuse herself for having a conflict of interest in being employed by the City who also employed the prosecuting attorney; and
- Failed to take a new oath of office when she was retained on the bench after her initial appointment.

*See, e.g.*, Am. Compl. at Claims 2, 6, 7, and 36; and *passim*.

All of these acts or omissions were undertaken in Judge Simonet's judicial capacity. *See Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir. 1985) ("An act is judicial if it is a function normally performed by a judge and the parties dealt with the judge in [her] judicial capacity.") (citation omitted), *opinion modified on denial of reh'g*, 778 F.2d 553 (10th Cir. 1985), *cert. granted*, *judgment vacated sub nom. Tyus v. Martinez*, 475 U.S. 1138 (1986). In short, the first exception to judicial immunity does not apply because the challenged conduct readily fell within the scope of Judge Simonet's judicial duties.

Neither does the second exception allow Ms. Baldyga to overcome the immunity bar. A judge acts in the "complete absence of all jurisdiction" only when the judge clearly lacks subject matter jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 356-57 n.7 (1978). As a county court judge for the City and County of Denver, Judge Simonet had subject matter jurisdiction over the Criminal Case. Ms. Baldyga alleges that the Criminal Case raised misdemeanor charges under the City Code for alleged conduct that occurred within the City. The Denver County Court has jurisdiction to hear such claims. *See* Colo. Const. art. VI, § 17 ("County courts shall have such . . . criminal . . . jurisdiction as may be provided by law, provided such courts shall not have jurisdiction of felonies"); *Id.* art. XX, § 6.h (under Denver's "home rule" authority, it has the power to enact ordinances under its city charter and impose fines and penalties for violation thereof; "[a]ny act in violation of the provisions of such charter or of any ordinance thereunder shall be criminal and punishable as such when so provided by any statute now or hereafter in force."); Denver Code of Ordinances § 4.2.6 ("The County Court of the City and County of Denver shall have original jurisdiction of *all cases arising under the Charter or ordinances of the City* and County of Denver with full power to enforce the same and to punish violations

thereof[.]") (emphasis added).[6]

And although Ms. Baldyga argues that Judge Simonet lacked jurisdiction because she failed to retake the oath of office after the electorate retained her on the bench, she does not point to any law requiring such a procedure upon retention. At base, Ms. Baldyga's allegations demonstrate nothing more than her "[d]isagreement with the action taken by" Judge Simonet, which "does not justify depriving [Judge Simonet] of [her] immunity." *Stump*, 435 U.S. at 363. Ms. Baldyga's willingness to pursue federal litigation against a judicial officer who made decisions with which she disagrees—subjecting Judge Simonet to months of litigation for her decisions—emphasizes the need for judges to be able to act without fear of suit and the importance of the absolute judicial immunity doctrine. *See id.* at 364 ("The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit.").

For all the reasons above, Judge Simonet has absolute immunity as to all federal claims for damages brought against her in her individual capacity. *See*, *e.g.*, *Raiser v. Kono*, 245 F. App'x 732, 735-36 (10th Cir. 2007) (dismissing § 1983 claims against a state court judge based on judicial immunity); *Stafford v. Goff*, 609 F. Supp. 820, 821-22 (D. Colo. 1985) (county court judge had jurisdiction to hear foreclosure action, and the judge therefore was absolutely immune from § 1983 claim relating to his rulings in that action ) (citing *Stump*, 435 U.S. at 357).

---

[6] *See also* Denver Code of Ordinances § 4.2.5 ("The County Court of the City and County of Denver shall have such . . . criminal . . . jurisdiction as now or hereafter may be provided by the constitution or general laws of the State of Colorado to be had or exercised by County Courts."); Colo. Rev. Stat. § 13-6-106(1)(a) ("The county court shall have concurrent original jurisdiction with the district court in the following criminal matters: (a) Criminal actions for the violation of state laws which constitute misdemeanors or petty offenses[.]").

Therefore, all federal claims against Judge Simonet in her individual capacity are

**dismissed with prejudice and without leave to amend**. *See Mehdipour v. Matthews*, 386 F.

App'x 775, 778-79 (10th Cir. 2010) (affirming trial court's dismissal of claims with prejudice on

the basis of judicial immunity); *see also Seale*, 32 F.4th at 1029 (amendment is futile when it is

"patently obvious" that a plaintiff cannot prevail on the facts alleged).

### B.      Official-Capacity Claims

"Suits against state officials in their official capacit[ies] should be treated as suits against

the State."[7] *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159,

166 (1985)); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (stating that state

officers sued in their official capacities are not "'persons' subject to suit under section 1983").

Here, Ms. Baldyga's claims seeking monetary damages and injunctive relief against Judge

Simonet in her official capacity are, in essence, claims against the state that are barred by the

Eleventh Amendment.

"The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in

federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205

(10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*,

577 F.3d 1255, 1258 (10th Cir. 2009)). "It is well established that under the Eleventh

Amendment, sovereign immunity prohibits federal courts from entertaining suits against states

---

[7] As a County Court judge, Judge Simonet is a state official. Article VI, section 1 of the Colorado
Constitution vests "[t]he judicial power of the state in . . . county courts, and such other . . .
judicial officers." Colo. Const. art. VI, § 1. Further, Article VI, sections 16 and 17 establish the
existence and jurisdiction of county courts and judges, thereby making them an extension of the
state. Colo. Const. art. VI, §§ 16, 17.

brought by their own citizens or citizens of another state without their consent." *Hunt v. Colo. Dep't of Corrs.*, 271 F. App'x 778, 780 (10th Cir. 2008) (citation omitted). "State sovereign immunity is more than immunity from liability—it actually deprives federal courts of subject-matter jurisdiction." *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011) (citation omitted).

The Eleventh Amendment thus bars suits for damages against states and state officials sued in their official capacities, including Judge Simonet. *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010); *see also, e.g.*, *Strepka v. Miller*, 28 F. App'x 823, 828 (10th Cir. 2001) ("Plaintiff's official capacity claims against [the state court judge] . . . were really claims against the State of Colorado."); *Kirchner v. Marshall*, No. 22-cv-01512-CNS-MEH, 2023 WL 110953, at *3 (D. Colo. Jan. 5, 2023) (collecting cases and holding that "the Eleventh Amendment bars [plaintiff's] claims against Defendant Jefferson County District Court" and recognizing that "[c]ourts have repeatedly held that, under the Eleventh Amendment, state courts and state court judges are immune from claims asserted against them"); *Silva v. U.S. Bank, Nat'l Assoc.*, 294 F. Supp. 3d 1117, 1126 (D. Colo. 2018) (holding that a state judicial district "is an arm of the state" and entitled to Eleventh Amendment immunity); *Fey v. Washington*, No. 16-cv-03103-WJM-MEH, 2017 WL 1344451, at *4 (D. Colo. Apr. 12, 2017) (same); *B.J.G. v. Rockwell Automation, Inc.*, No. 11-cv-262-GKF-TLW, 2012 WL 28077, at *2 (N.D. Okla. Jan. 5, 2012) ("[T]he claims against [Oklahoma appellate judges] are precluded by the Eleventh Amendment's grant of sovereign immunity to states."), *aff'd as modified*, 497 F. App'x 807 (10th Cir. 2012).

No exception to Eleventh Amendment immunity applies here, as to any claim. *Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 866 (10th Cir. 2003) (citations omitted) (recognizing three

exceptions: (1) "the States may consent to suit, waiving their immunity"; (2) "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority"; and (3) "under the doctrine announced in *Ex parte Young*, [209 U.S. 123 (1908)], an individual seeking only prospective injunctive relief for ongoing violations of federal law may bring suit against state officials in federal courts") (cleaned up), *overruled in part on other grounds by Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784 (10th Cir. 2020). All three exceptions are readily disposed of here.

The State of Colorado has not consented to this suit, in which a former defendant in a state criminal proceeding sues a state judicial officer directly in federal court. And § 1983 "does not abrogate the state's sovereign immunity and neither the states nor the agencies qualify as 'persons' under § 1983." *Davis v. California*, 734 F. App'x 560, 564 (10th Cir. 2018). As for any claim for prospective injunctive or declaratory relief against Judge Simonet, the *Ex parte Young* exception to sovereign immunity has no application here.

"[T]he *Ex parte Young* doctrine provides an exception for plaintiffs who (1) allege 'an ongoing violation of federal law' and (2) 'seek[ ] relief properly characterized as prospective.'" *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022) (quoting *Williams v. Utah Dep't of Corrs.*, 928 F.3d 1209, 1214 (10th Cir. 2019)); *see also Ex parte Young*, 209 U.S. 123 (1908). Ms. Baldyga asks that Judge Simonet be "held responsible civilly or criminally," and that she be "barred from holding any type of Legal License or Certification, that would allow [her] to work for a governmental/law enforcement agency." Am. Compl. at 28. Ms. Baldyga's claims against Judge Simonet all hinge on purported violations that occurred when the Judge was handling matters related to the Criminal Case, which has been dismissed. These circumstances provide no

support for the notion that there is an ongoing violation of Ms. Baldyga's constitutional rights, such that the non-monetary relief requested can be "properly characterized as prospective." *Chilcoat*, 41 F.4th at 1214. Therefore, any injunctive or non-monetary claims against Judge Simonet are barred by the Eleventh Amendment.

In sum, Judge Simonet is shielded by Eleventh Amendment immunity from all official-capacity claims for monetary or injunctive relief, regardless of the legal theory on which such claims are brought. *See, e.g.*, *Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.*, 255 F. Supp. 3d 1064, 1086 (D. Colo. 2017) ("[A]bsent a state's consent, the Eleventh Amendment prohibits a federal court from adjudicating state-law claims against a state.") (citation omitted); *Smith v. Plati*, 56 F. Supp. 2d 1195, 1201 (D. Colo. 1999) (recognizing that "a federal court must apply Eleventh Amendment immunity to claims based on state law as well as those based on federal law").

Because the court does not have subject matter jurisdiction to address official-capacity claims against Judge Simonet, any such claim is **dismissed without prejudice and without leave to amend**. *See, e.g.*, *Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016) ("It is fundamental, of course, that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal . . . must be without prejudice.") (citation and internal quotation marks omitted); *Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) ("Because Eleventh Amendment immunity is jurisdictional, th[e] dismissal should [be] without prejudice."); *Seale*, 32 F.4th at 1029 (amendment is futile when it is "patently obvious" that a plaintiff cannot prevail on the facts alleged).

.

IV.     **Section 1983 Claims Against the Officers in Their Individual Capacities**

The Officers invoke qualified immunity as a defense to all federal claims brought against them in their individual capacities. Motion at 13.

A.     **Qualified Immunity Principles**

The Tenth Circuit has made clear that "qualified immunity 'represents the norm' in suits against public officials." *Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, 814 (10th Cir. 2022) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)). Officials sued in their individual capacities are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The qualified immunity test imposes a "heavy two-part burden" on the plaintiff. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (citation and internal quotation marks omitted). "[T]he onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Surat v. Klamser*, 52 F.4th 1261, 1270-71 (10th Cir. 2022) (quotation omitted).

"Clearly established" means that, at the time of the challenged conduct, "the contours of a right are sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up) (emphasis added). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Wesby*, 583 U.S. at 63 (quoting *al-Kidd*, 563 U.S. at 741). In evaluating the clearly established law prong of the qualified immunity test, the court recognizes

the "longstanding principle that clearly established law should not be defined at a high level of generality." *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018)). "General legal standards therefore rarely clearly establish rights." *Id.* at 939 (citations omitted). Rather, "in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quotation omitted). It is the plaintiff's obligation to cite cases that satisfy the burden of demonstrating the asserted law is clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law.").

Under these rigorous standards, "'all but the plainly incompetent or those who knowingly violate the law'" receive the protection of immunity. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Applying these principles here, the court finds that Ms. Baldyga has failed to overcome the Officers' assertion of qualified immunity.

**B.      Failure to Allege a Violation of Any Clearly Established Constitutional Right**

Ms. Baldyga's substantive factual allegations regarding the Officers are exceedingly sparse: (1) the victim called 911 at approximately 9:30 p.m. on December 9, 2023; (2) the Officers responded to Ms. Baldyga's home thirty minutes later, at approximately 10:00 p.m., "for a civil assist to gather [the victim's] belongings"; and (3) the Officers told Ms. Baldyga that the victim had reported that she "had been physically violent" toward him. Am. Compl. at 8. The remaining allegations concerning the Officers' alleged conduct are wholly conclusory: (1) the Officers lacked probable cause to arrest Ms. Baldyga; (2) the Officers had no information "that

"would indicate violence had occurred"; (3) the Officers "illegally arrested and searched" her; (4) the Officers falsified the arrest report by reporting the arrest type as "On-View," and "conveyed false information by marking the charges as unclassified when it was clear that she did not appear to be violent, which could constitute a lower severity charge classification"; and (5) the Officers falsely claimed to have served her with a copy of the summons and complaint. *Id.* at 8, 13 (cleaned up).

Setting aside the conclusory contentions that the Officers violated the law, which are "not entitled to be assumed true," *see Iqbal*, 556 U.S. at 681, the smattering of well-pleaded facts falls far short of stating any plausible claim for relief against the Officers, on any constitutional theory. If anything, the allegations permit the court to reasonably infer that the Officers had probable cause to enter Ms. Baldyga's home to arrest her—she asserts that the Officers had a report from the victim stating that she had been physically violent with him, and he requested police assistance in gathering his things from the home—thus undermining her ability to plead potential Fourth Amendment claims sounding in malicious prosecution, false arrest, or unreasonable search and seizure.[8] *See, e.g.*, *Carbajal v. McCann*, 808 F. App'x 620, 630 (10th Cir. 2020) (elements of a malicious prosecution include that "no probable cause supported the original arrest, continued confinement, or prosecution"); *Philip v. Ellis*, No. 18-cv-02633-PAB-STV, 2019 WL 5901922, at *5 (D. Colo. Oct. 8, 2019) ("Colorado common law prescribes only three elements for a claim of false arrest: (1) The defendant intended to restrict the plaintiff's freedom of movement; (2) The defendant, directly or indirectly, restricted the

---

[8] Ms. Baldyga's claims against the Officers would seem to fall most logically under the Fourth Amendment.

plaintiff's freedom of movement for a period of time, no matter how short; and (3) The plaintiff was aware that [his] freedom of movement was restricted. Even if these three elements are met, Defendants can defeat a false arrest claim if there was probable cause for the arrest.") (cleaned up), *recommendation adopted*, 2019 WL 5894304 (D. Colo. Nov. 12, 2019); *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) ("In the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law 'by asking whether there was 'arguable probable cause'' for the challenged conduct.") (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)).

In addition to failing to allege a violation of a constitutional right, of any type, neither has Ms. Baldyga adduced any Tenth Circuit or Supreme Court precedent, or a clear weight of authority from other courts, clearly establishing that the Officers acted in contravention of the Constitution under the circumstances present here. Ms. Baldyga points to no case that would have put "*every reasonable* official" in the Officers' position on notice, "*beyond debate*," that they violated the Constitution by acting on a victim's report that he had been subjected to physical violence by his domestic partner; by going to the partner's home to retrieve the victim's belongs; and by executing an arrest of the partner, based on the victim's report. *See al-Kidd*, 563 U.S. at 741 (emphasis added). Ms. Baldyga's Response is devoid of any legal authority that even generally addresses the pertinent points, let alone any precedent that would have established the law with the requisite specificity. *See generally* Response.

Ms. Baldyga thus has failed to meet her burden to allege a violation of clearly established law, entitling the Officers to qualified immunity on any constitutional claim embedded in the Amended Complaint. Therefore, all § 1983 claims against the Officers are **dismissed without**

**prejudice and with leave to amend**. *See, e.g.*, *Ellis v. Oliver*, 714 F. App'x 847, 851 (10th Cir. 2017) (reversing and remanding with instructions to dismiss the claims against a prison warden "without prejudice based on qualified immunity").

## V. Federal Claims Against the City and the Officers in Their Official Capacities

Because Ms. Baldyga has not plausibly stated a constitutional violation, any related municipal liability claims against the City—as well as any official-capacity claims against the Officers—fail as well. *Monell*, 436 U.S. at 690; *Graham*, 473 U.S. at 165-66 (official-capacity claim is "to be treated as a suit against the entity"); *see also, e.g.*, *Crowson v. Washington Cnty., Utah*, 983 F.3d 1166, 1186 (10th Cir. 2020) (stating that "a claim under § 1983 against . . . a municipality cannot survive a determination that there has been no constitutional violation") (citation omitted); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("It is well established, therefore, that a municipality cannot be held liable under section 1983 for the acts of an employee if a jury finds that the municipal employee committed no constitutional violation.") (citations omitted). Accordingly, Ms. Baldyga's federal claims against the City and the Officers in their official capacities are **dismissed without prejudice and with leave to amend**.

## VI. Claims Against DDA Swestka

DDA Swestka has not been served and has never appeared in this case. Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court, on motion or on its own after notice to the plaintiff, must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Ms. Baldyga filed suit on May 9, 2024, meaning that Rule 4(m)'s 90-day

deadline to serve DDA Swestka expired on August 7, 2024. Therefore, it is **ORDERED** that Ms. Baldyga shall serve DDA Swestka in a manner complying with Rule 4 and file an executed waiver or return of summons **on or before April 30, 2025**. In the event that Ms. Baldyga fails to serve DDA Swestka and comply with these instructions, the court may, without further notice, recommend that all claims against DDA Swestka be dismissed without prejudice under Rule 4(m) and Rule 41(b) for failure to prosecute and to comply with a court order.

In the event Ms. Baldyga elects to serve and pursue claims against DDA Swestka, she should bear in mind the jurisdictional bars discussed in this Order, as well as the doctrine of absolute prosecutorial immunity. *See, e.g.*, *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."); *see also Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir. 1990) ("A prosecutor is absolutely immune for activities which are intimately associated with the judicial process, such as initiating and pursuing a criminal prosecution.") (citation and internal quotation marks omitted).

## CONCLUSION

Consistent with the foregoing, the court **GRANTS** the Motion to Dismiss, ECF No. 13, and **GRANTS** the Motion to Strike Plaintiff's Sur-Reply, ECF No. 26. It is further **ORDERED**:

(1) Claims 1-4, 8-41, 43 are **dismissed with prejudice and <u>without</u> leave to amend**;

(2) All state law claims against the Moving Defendants are **dismissed without prejudice and with leave to amend**;

(3) All federal claims against Judge Simonet in her individual capacity are **dismissed**

**with prejudice and <u>without</u> leave to amend**, and all federal claims against Judge Simonet in her official capacity are **dismissed without prejudice and <u>without</u> leave to amend**;

(4) All claims brought pursuant to 42 U.S.C. § 1983 against Officers Conley and Olson in their individual capacities are **dismissed without prejudice and with leave to amend**;

(5) All claims against the City and Officers in their official capacities are **dismissed without prejudice and with leave to amend**; and

(6) Ms. Baldyga shall serve DDA Swestka and file an executed waiver or return of summons **on or before April 30, 2025**.

Finally, it is **ORDERED** that Ms. Baldyga may file an amended complaint consistent with the parameters defined in this Order **on or before April 30, 2025**. The court reserves the right to strike any non-compliant pleading.

DATED: March 31, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge