# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01303-SBP

STEPHANIE BALDYGA

      Plaintiff,

v.

CITY AND COUNTY OF DENVER,
MARC-LUCA CONLEY, and
KODI OLSON,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

This civil action stems from Plaintiff Stephanie Baldyga's arrest by Denver Police Department officers following a report that she had engaged in physically violent behavior toward a victim with whom she had shared a domestic relationship. This court previously dismissed with prejudice a portion of the myriad claims Plaintiff initially attempted to raise, but dismissed the remainder without prejudice and granted Plaintiff leave to amend. The matter is now before the court on Defendants' motion to dismiss all claims Plaintiff brings in her amended pleading. ECF No. 38 ("Motion" or "Motion to Dismiss").

The undersigned Magistrate Judge fully presides over this case pursuant to 28 U.S.C. § 636(c), the parties' consent (ECF No. 28), and the Order of Reference dated August 29, 2024 (ECF No. 29). The court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367. Having

reviewed the Motion and the related briefing, the applicable case law, and the entire docket, the court now respectfully **GRANTS** the Motion to Dismiss.

**BACKGROUND**[1]

Plaintiff was arrested on December 9, 2023. ECF No. 33 at 9, ¶ 1. According to Plaintiff, a 911 call "was placed by the alleged victim at approximately 9:30 PM, requesting a civil standby to collect personal belongings." *Id.* Plaintiff identifies the victim as her boyfriend. *See* ECF No. 43 at 4. Defendants Marc-Luca Conley and Kodi Olson, who are Denver Police Department officers (the "Officers"), responded to the call. *Id.*

When the Officers arrived on scene, Plaintiff's boyfriend accused her "of physical violence," notwithstanding—in Plaintiff's view—the absence of "physical injury, corroborative evidence, or a clear factual basis" to support accusation. *Id.* at 9, ¶ 2. The Officers then arrested Plaintiff on charges of assault and "Wrongs to Minors." *Id.* At a hearing in the ensuing criminal case on April 5, 2024, the presiding judge allowed the case against Plaintiff to move forward, *id.* at 10, ¶ 5, but the charges against her were dropped on the day of trial after the victim refused to cooperate. *See* ECF No. 43-1 at 2, "Action Information" in case number 23GS010469 (June 17, 2024 entry noting that "def appears [City Attorney] appears. [City Attorney] moves to dismiss due to victim no longer cooperating. Crt grants dismissal wout prejudice").[2]

---

[1] The facts below are taken from the second amended complaint, ECF No. 33, and are presumed to be true, unless otherwise noted, for purposes of ruling on the Motion to Dismiss.

[2] Plaintiff now contends that the court is prohibited from considering information contained in the docket in her sealed criminal case—including the fact that the charges against her were dropped because the victim refused to cooperate on the morning of trial, *see* ECF No. 43 at 10—but Plaintiff placed that document in the record. Regardless, this court would not be precluded from considering that information. *See* Colo. Rev. Stat. § 24-72-703(2)(III) ("A record sealed pursuant to article 72 and section 13-3-117 may be used by a . . . court . . . for any lawful purpose

The crux of Plaintiff's claims here rests on her contention that "[t]he arrest and subsequent search of [her] residence were conducted absent probable cause, a valid warrant, a felony arrest, exigent circumstances, or any articulable facts supporting the charges." *Id.* at 9, ¶ 3. Plaintiff initiated the instant lawsuit on May 9, 2024, asserting claims against the City and County of Denver (the "City"); the Officers; the Honorable Frances E. Simonet, the presiding judge in the Criminal Case; and Haley Swestka, the Assistant City Attorney who was assigned to prosecute the Criminal Case. *See* ECF No. 1. This court previously dismissed all claims against Judge Simonet, without leave to amend. *See* ECF No. 30 at 29-30. As for the claims against Ms. Swestka, who was never served, the court ordered Plaintiff to effect service on her on or before April 30, 2025. *Id.* at 28-29. Plaintiff did not do so, and—consistent with the court's orders— neither Ms. Swestka nor Judge Simonet are named as defendants in the operative pleading. *See generally* ECF No. 33. Plaintiff does, however, attempt to resurrect Claim 43, which she labels as one for "improper service of process" under Colorado Rule of Civil Procedure 4. *See id.* at 17. This court dismissed Claim 43 with prejudice and without leave to amend in its March 31, 2025 Order, ECF No. 30 at 13-14, and so does not countenance that defunct claim at this juncture.

The second amended complaint raises claims under both federal and state law. Two claims are brought against the Officers, in both their official and individual capacities, under 42 U.S.C. § 1983: one for "unlawful search and seizure" in violation of the Fourth Amendment (Claim 5), ECF No. 33 at 11-12, ¶¶ 1-6, and another invoking a plethora of constitutional

---

relating to the investigation or prosecution of any case[.]"); *see also id.* § (7)(a) ("Court orders sealing records of official actions pursuant to this part 7 do not limit the operations of . . . [t]he rules of discovery or the rules of evidence promulgated by the supreme court of Colorado or any other state or federal court.").

theories (Claim 42), *id.* at 15-17, ¶¶ 1-7 (claiming that the Officers deprived Plaintiff of her

rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments). Plaintiff separately

sues the City in two claims. *Id.* at 12-13, ¶¶ 1-6 (Claim Six) (alleging "Violation of the Fifth and

Fourteenth Amendments . . . Due Process and Right Against Self-Incrimination"); *id.* at 13-15,

¶¶ 1-7 (Claim Seven) (alleging "Violation of the Sixth and Fourteenth Amendments . . . (Right to

Jury Trial)").

Plaintiff's state law claims assert that the Officers and the City violated her rights under

various Colorado criminal and civil statutes. *Id.* at 19-31, ¶¶ 1-4 (Claim 44, alleging a violation

of Colo. Rev. Stat. § 18-1.3.103.7, "Alternative options for pregnant and postpartum people");

*id.* at 23-25, ¶¶ 1-6 (Claim 46, alleging a violation of Colo. Rev. Stat. § 18-8-105, "Accessory to

crime"); *id.* at 21-23, ¶¶ 1-5 (Claim 45, alleging a violation of Colo. Rev. Stat. § 24-12-101,

providing for the "Form of oath or affirmation for public office"); *id.* at 25-26, ¶¶ 1-6 (Claim 47,

Colo. Rev. Stat. § 42-7-510, addressing "Insurance or bond required" for motor vehicles).

Defendants move to dismiss all claims. ECF No. 38. The Motion is fully briefed and ripe

for disposition. *See* ECF No. 40; ECF No. 45.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for

"failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a

motion under Rule 12(b)(6), a court must "'accept as true all well-pleaded factual allegations . . .

and view these allegations in the light most favorable to the plaintiff.'" *Casanova v. Ulibarri*,

595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561

F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or

conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the plaintiff pleads factual content that, when taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

In conducting the plausibility analysis, the court acknowledges Plaintiff's status as a pro se litigant and bears in mind that pro se filings are entitled to a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). Even so, the court cannot and does not act as a pro se litigant's advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to a pro se party as to one who is represented. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *see also Yang v.*

*Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("*Pro se* status 'does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'") (quoting *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994)).

**ANALYSIS**

The court turns to the arguments for and against dismissal of Plaintiff's claims.[3]

## I.    Section 1983 Claims

### A.    Claims Against the Officers in Their Individual Capacities (Claims 5 and 42)

The Officers argue they are shielded from liability for civil damages on both claims by the doctrine of qualified immunity. ECF No. 38 at 11, 14. For the reasons that follow, the court respectfully agrees.

#### 1.    Fourth Amendment "Unlawful Search and Seizure" (Claim 5)

The allegedly offending conduct that is the focus of this "unlawful search and seizure"

---

[3] As an initial matter, the court rejects Plaintiff's argument that Federal Rule of Civil Procedure 12(g)(2) bars Defendants from filing a second motion to dismiss because they raised the same defenses in seeking dismissal of the prior iteration of her complaint. *See* ECF No. 43 at 2; *see also* Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."). Because the court allowed Plaintiff to amend her complaint, Defendants may seek to dismiss her new pleading. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1102 (10th Cir. 2017) (recognizing that a motion to dismiss is "a permissible response to" an amended complaint) (citing *Kaplan v. Reed*, 28 F. Supp. 2d 1191, 1199 (D. Colo. 1998) (considering third round of motions to dismiss in response to amended complaint); *Pioneer Craft House, Inc. v. City of S. Salt Lake*, No. 2:13-cv-705, 2016 WL 843274, at *1 (D. Utah Mar. 1, 2016), *aff'd*, 676 F. App'x 744 (10th Cir. 2017) (considering second motion to dismiss in response to amended complaint)). Furthermore, Rule 12(g)(2) bars only defenses that were "available" but "omitted" from the prior motion. Here, Defendants are not asserting previously omitted defenses; they are responding to a new and superseding pleading, in full compliance with Rule 12.

claim is that the Officers took the word of Plaintiff's boyfriend who had placed the emergency call. The reporting party claimed to have been subjected to "physical violence" at Plaintiff's hands, even though—in Plaintiff's view—there was no "physical injury, corroborative evidence, or a clear factual basis" for the victim's report. ECF No. 33 at 9, ¶ 2. Nevertheless, the Officers proceeded to arrest Plaintiff on charges of assault and "Wrongs to Minors." *Id.*

Plaintiff makes no other concrete factual allegations concerning the circumstances of her arrest, but rather avers, in conclusory fashion, that "[t]he arrest and subsequent search of [her] residence were conducted absent probable cause, a valid warrant, a felony arrest, exigent circumstances, or any articulable facts supporting the charges." *Id.* at 9, ¶ 3. Therefore, the Officers' supposed lack of probable cause is the alleged constitutional defect underlying this claim.

### a.        Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A motion to dismiss based on qualified immunity creates a presumption of immunity, *Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022) (citation omitted), and the burden shifts to the plaintiff to overcome this presumption, *Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022). To rebut an assertion of qualified immunity, a plaintiff must establish "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (quotation omitted).

A right is clearly established if there is a Supreme Court or Tenth Circuit decision on point or if the weight of authority in other courts provides that the right must be as the plaintiff maintains. *Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). A case is considered "on point" if it involves materially similar conduct to the case at hand or applies "with *obvious clarity*" to the conduct at issue. *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (quotation omitted). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate," such that "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation modified).

### b.    No Violation of a Clearly Established Constitutional Right

As noted in the foregoing description of Plaintiff's minimal factual allegations, probable cause is the guiding principle for evaluating whether a constitutional violation occurred because "[o]fficers must have probable cause to initiate a search, arrest, and prosecution under the Fourth Amendment." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014).

"In the context of a qualified immunity defense on an unlawful search or arrest claim, [the Tenth Circuit Court of Appeals] ascertain[s] whether a defendant violated clearly established law by asking whether there was '*arguable* probable cause' for the challenged conduct." *Id.* (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)) (emphasis added). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, *even if mistaken*, belief that probable cause exists." *Id.* at 1141 (citing *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007)) (emphasis added); *see also A.M. v. Holmes*, 830 F.3d 1123, 1140 (10th Cir. 2016) ("[I]n the § 1983 qualified-immunity context, an officer

may be mistaken about whether he possesses *actual* probable cause to effect an arrest, so long as the officer's mistake is reasonable—*viz.*, so long as he possesses 'arguable probable cause.'") (quoting *Cortez*, 478 F.3d at 1121).

"Arguable probable cause" is less than the higher standard of actual probable cause. *Holmes*, 830 F.3d at 114 ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry.") (quoting *Jones v. Cannon*, 174 F.3d 1271, 1283 n. 3 (11th Cir. 1999)). To satisfy the lower standard of arguable probable cause, an officer must have "reasonably trustworthy information that would lead a prudent person to believe that [the suspect] had committed an offense." *Shimomura v. Carlson*, 811 F.3d 349, 353 (10th Cir. 2015). A defendant is entitled to qualified immunity if "a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (quotation omitted).

Viewing Plaintiff's allegations in the light most favorable to her, the court concludes she has not alleged, under extant clearly established law, that every reasonable officer in Officer Conley's and Olson's position would have had fair warning that arguable probable cause was lacking. Put another way, the Officers could have reasonably believed, even if mistakenly, that they possessed reasonably trustworthy information to support Plaintiff's arrest and the search of her residence.

Consider the circumstances known to the Officers at the time, as drawn from the well-pleaded facts. A person had made a report to the Denver Police Department by means of its

9

emergency call system, requesting assistance with "a civil standby to collect personal belongings," No. 33 at 9, ¶ 1, thus indicating the existence of a domestic situation in which one party believed police supervision was necessary for his protection. The Officers also were informed by the reporting party that he was the victim of "physical violence" at Plaintiff's hands. *Id.* Plaintiff's pleading acknowledges that the Officers were in possession of this information, but contests that it was bolstered by physical evidence or a "clear factual basis." *Id.* at 9, ¶ 2. However, a "clear factual basis" is not the governing standard here; arguable probable cause is. Nor does *Plaintiff's* judgment about the amount of evidence required to establish arguable probable cause direct the court's assessment of whether her pleading suffices to allege a constitutional violation.

Taking as true the facts acknowledged by Plaintiff in her pleading, they fail to plausibly demonstrate that the Officers lacked arguable probable cause for their actions. They were called to supervise a domestic situation involving the retrieval of belongings at the request of a person who then reported being the victim of "physically violent" conduct. The Tenth Circuit has emphasized that "the statement of a victim of a crime to police may establish probable cause absent some reason to think the statement not trustworthy." *Moses-El v. City & Cnty. of Denver*, No. 20-1102, 2022 WL 1741944, at *14 (10th Cir. May 31, 2022) (quoting *Cortez*, 478 F.3d at 1121). Although Plaintiff identifies what she considers to be several evidentiary gaps in her boyfriend's report, those issues "do not preclude a finding of arguable probable cause, even when taking all inferences in [her] favor." *See id.* The absence of a visible physical injury is not incompatible with "physically violent" conduct so as to render her boyfriend's report necessarily "untrustworthy," and there is no requirement that officers obtain "corroborative evidence" in

order for arguable probable cause to exist. Indeed, inconsistent statements from witnesses may even support a finding of the higher standard of actual probable cause, as opposed to the lower standard of arguable probable cause. *See id.* (rejecting argument that arguable probable cause was lacking because an identification by an eyewitness had "several issues"); *Easton v. City of Boulder, Colo.*, 776 F.2d 1441, 1450 (10th Cir. 1985) (finding that "[e]vidence is not necessarily insufficient merely because the witness' testimony has been contradictory and the explanations therefor difficult of belief," and holding that inconsistent statements from two possible child victims of sexual assault were sufficient to supply probable cause) (citations omitted); *see also Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995) (rejecting argument that an officer had failed to conduct a reasonable pre-arrest investigation by not interviewing three people the plaintiff had named as alibi witnesses, and concluding that the "failure to question alibi witnesses prior to the arrest did not negate probable cause").

No inference of objectively unreasonable actions by the Officers can be drawn from the circumstances Plaintiff has alleged, which demonstrate that "a reasonable officer *could* have believed that probable cause existed to arrest or detain" her and to search her residence. *Stonecipher*, 759 F.3d at 1141 (quotation omitted) (emphasis added). At bottom, Plaintiff's pleading reduces to the mere assertion that "[t]he arrest and subsequent search of [her] residence were conducted absent probable cause, ECF No. 33 at 9, ¶ 3, which is a legal conclusion not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

In sum, assuming the veracity of Plaintiff's account of the facts, the Officers' conduct does not fall outside the bounds of the Fourth Amendment. Because Plaintiff has failed to

sufficiently plead a violation of her constitutional rights, she has not carried her burden under the first prong of the qualified immunity analysis. Accordingly, the court "must grant qualified immunity" to Officers Conley and Olson. *Brown v. City of Tulsa*, 124 F.4th 1251, 1265 (10th Cir. 2025) ("[I]f the plaintiff fails to satisfy either prong [of the qualified immunity inquiry], a court must grant qualified immunity.") (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).[4] And because Plaintiff has presented virtually identical factual assertions after being granted yet another opportunity to amend—failing once again to plead a plausible claim for relief—Claim Five is now **dismissed with prejudice**. *See Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010) (instructing the district court to dismiss claim on qualified immunity grounds with prejudice); *see also, e.g.*, *Chaney-Snell v. Young*, 98 F.4th 699, 710 (6th Cir. 2024) ("When qualified immunity bars a § 1983 claim, the court should dismiss the claim *with prejudice* to any later refiling.").

### 2.    Claim Premised on Other Constitutional Theories (Claim 42)

In this claim, titled "Civil Action for Deprivation of Rights," Plaintiff sues the Officers

---

[4] Having failed to allege that the Officers lacked arguable probable cause for the challenged actions, Plaintiff's allegations by definition are also insufficient to meet the second step of the qualified immunity analysis: to show that the constitutional right allegedly violated was clearly established at the time of the alleged unlawful activity. In fact, "[a]rguable probable cause" *is* the "clearly established law" to which the Officers were obliged to abide. *Stonecipher*, 759 F.3d at 1141 (a court must "ascertain whether a defendant violated clearly established law by asking whether there was 'arguable probable cause' for the challenged conduct") (quoting *Kaufman*, 697 F.3d at 1300). And Plaintiff points to no analogous case that would have indicated, beyond debate, to every reasonable officer in the Officers' position that the low bar of arguable probable cause was not satisfied under the circumstances they faced. *See* ECF No. 43 at 6-7 (listing cases under heading "Qualified Immunity Does Not Apply at the Pleading Stage"). Indeed, the cases referenced in the court's analysis here clearly establish the contrary proposition.

for alleged violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments. ECF No. 33 at 15-16, ¶ 2. The pleading defect in this claim is that Plaintiff provides literally no factual specifics concerning any conduct by the Officers that allegedly ran afoul of each of these rights.

Generously construed in Plaintiff's favor, this claim may be simply another iteration of the "unreasonable search and seizure" claim challenging her arrest and the search of her residence, for which the Officers are entitled to qualified immunity for the reasons previously explained. Plaintiff presents no factual allegations plausibly connecting the Officers to any other alleged violation of her constitutional rights, including to the purported deprivations associated with her "unlawful postpartum imprisonment" or the alleged compromise to her "right to a fair and impartial jury trial," *id* at 16, ¶ 2—a trial that never occurred because the charges against her were dropped. *See* ECF No. 43-1 at 2. Not only do Plaintiff's sparse and conclusory allegations fail to state a viable claim on any constitutional theory, they are also insufficient to demonstrate the Officers' personal participation in any of these purported violations, which is an essential element of a civil rights claim against an individual under § 1983. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Cuervo v. Sorenson*, 112 F.4th 1307, 1313-14 (10th Cir. 2024) ("Section 1983 allows an individual to sue a government actor in his individual capacity for violating her constitutional rights and recover money damages from resulting injuries that *the actor caused by his violation*.") (emphasis added); *see also Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) (noting that "the requirement of personal participation . . . is a component of liability

13

under § 1983," where the court "ask[s] whether a clearly established constitutional right has been violated") (citation omitted).

In short, Plaintiff pleads no cognizable violation of her constitutional rights at all, let alone a claim challenging conduct in which the Officers were personally involved. The Officers are entitled to qualified immunity and, accordingly, Claim 42 is **dismissed with prejudice**.

### B.    Official-Capacity/Municipal-Liability Claims (Claims 5-7, 42)

Plaintiff also sues the Officers in their official capacities in Claims 5 and 42, effectively bringing these claims against the City. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978) (explaining that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). Plaintiff separately brings two claims against the City directly, based on alleged procedural inadequacies in the process associated with her criminal case (Claims 6-7). Because Plaintiff has failed to plausibly allege that either Officer—or any other City employee—violated her constitutional rights, any purported *Monell* claim also fails.

Longstanding precedent holds "that a municipality cannot be held liable under section 1983 for the acts of an employee if [the] employee committed no constitutional violation." *Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *Hawker v. Sandy City Corp.*, 591 F. App'x 669, 675-76 (10th Cir. 2014) ("[The officer's actions in this case simply do not rise to the level of a constitutional violation. And because [the officer] committed no constitutional violation, the City cannot be held liable."). Stated otherwise, "[i]f a plaintiff suffered no constitutional violation, he cannot recover simply because some municipal policy might have authorized an officer to violate the Constitution." *Frey v. Town of Jackson, Wyo.*, 41

14

F.4th 1223, 1239 (10th Cir. 2022) (upholding the dismissal of a municipal-liability claim because the plaintiff did not allege an underlying constitutional violation) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)); *Harmon v. City of Norman, Okla.*, 61 F.4th 779, 794 (10th Cir. 2023) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.") (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). "The crux of a municipal-liability claim is that a municipal policy or custom caused the plaintiff to suffer a constitutional injury." *Frey*, 41 F.4th at 1239 (citing *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton*, 997 F.2d at 782). Likewise here, without a constitutional violation, Plaintiff has sustained no injury for which the City, or the Officers in their official capacities, can be liable. Instead, Plaintiff's allegations demonstrate that the Officers in fact possessed arguable probable cause to arrest her and to search her residence, compelling the conclusion that they did *not* violate her constitutional rights.

Plaintiff also has not alleged that she suffered a constitutional violation from the actions described in Claims 6 and 7, the municipal-liability claims against the City. Plaintiff's wholly conclusory assertions that the "city attorney" and the "presiding judge" (presumably, Ms. Swestka and Judge Simonet) sought to introduce unspecified "tainted" evidence in her criminal case (which never went to trial), *see* ECF No. 33 at 12-13, ¶¶ 1-3, 4, and that the City "impos[ed] financial and procedural barriers to obtaining a jury trial" by requiring her to pay the twenty-five-dollar jury fee mandated by Colorado law, *id.* at 13-14, ¶¶ 1-5,[5] plausibly allege no violation

---

[5] *See Premier Members Fed. Credit Union v. Block*, 31 P.3d 276, 278 (Colo. App. 2013) (concluding that a defendant who failed to pay the jury fee on time waived his right to a jury

of a constitutional right.

Plaintiff attempts to repair this fatal pleading defect by raising new allegations in her response to the Motion to Dismiss. Her primary new contention is that the City "maintains an unconstitutional pattern, practice, or policy of training officers to make discretionary domestic-violence arrests 'to avoid liability,' disguised as probable cause," and that this policy was applied to her when the Officers arrested her after her boyfriend reported that she had behaved in a physically violent manner toward him. ECF No. 43 at 4; *cf.* ECF No. 33 (no reference to any training deficit in the second amended complaint). Plaintiff cannot amend her pleading by adding factual allegations in response to a motion to dismiss, and the court is authorized to disregard these extraneous new contentions. *See, e.g.*, *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015). But even if the court considers her new assertion that the Officers were improperly trained at the City's behest, she runs headlong into the identical hurdle that requires the dismissal of her existing municipal-liability claims: a *Monell* claim asserting a policy or practice of improper training "may not be maintained without a showing of a constitutional violation by the allegedly un-, under-, or improperly-trained officer." *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1187 (10th Cir. 2020); *accord, e.g.*, *Thao v. Grady Cnty. Crim. Just. Auth.*, 159 F.4th 1214, 1233-34 (10th Cir. 2025) ("a failure-to-train claim requires a predicate showing that the officers did in fact violate the decedent's constitutional rights"); *Bond*

---

trial); *see also* Colo. R. Civ. P. 38(e) ("The failure of a party to file and serve a demand for trial by jury and simultaneously pay the requisite jury fee as required by this Rule constitutes a waiver of that party's right to trial by jury."); Colo. Rev. Stat. § 13-71-144(1)(c) ("Each party to an action who does not affirmatively waive, in writing, the right to a trial by jury on all issues which are so triable shall pay the jury fee.").

16

*v. Regalado*, No. 22-5065, 2023 WL 7014047, at *7 (10th Cir. Oct. 25, 2023) ("[F]or a

municipality (or sheriff, in this case) to be held liable for either a failure-to-train or failure-to-

supervise claim, an individual officer (or deputy) must have committed a constitutional

violation.") (quoting *Estate of Burgaz by & through Zommer v. Bd. of Cnty. Comm'rs for

Jefferson Cnty.*, 30 F.4th 1181, 1189 (10th Cir. 2022)); *Myers*, 151 F.3d at 1317 (stating that

"failure to train claims . . . require[ ] a predicate showing that the officers did in fact" violate the

plaintiff's rights). For the reasons delineated throughout this Order, Plaintiff's pleading fails to

make the requisite "predicate showing" of a constitutional violation, by the Officers or any other

City personnel.

To summarize, because Plaintiff has not alleged that a "municipal policy of some nature

caused a constitutional tort" to her, *see Monell,* 436 U.S. at 691, all municipal-liability claims—

against the City and the Officers in their official capacities—are **dismissed with prejudice**.[6]

---

[6] "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citation omitted). The court finds that amending this claim would be futile. Plaintiff has filed three complaints, and this is the second motion to dismiss filed in this case. *See* ECF No. 13. Plaintiff was aware of Defendants' challenges to the sufficiency of her pleading—in particular, that the Officers had probable cause for their actions—when she amended her pleading. It is now apparent that her claims rest on facts that cannot be altered or manipulated to overcome the arguable probable cause hurdle. *See Ybarra v. Bd. of Cnty. Comm'rs, Custer Cnty.*, No. 25-cv-00490-MDB, 2026 WL 884903, at *13 n.19, n.25 (D. Colo. Mar. 31, 2026) (dismissing claims, including a *Monell* claim, with prejudice on a second motion to dismiss where "Plaintiff was aware of Defendants' challenge to the sufficiency of her pleading when she amended her Complaint"); *Dennis v. City & Cnty. of Denver, Colo.*, No. 22-cv-0608-WJM-KAS, 2024 WL 4381338, at *7 (D. Colo. Oct. 3, 2024) ("Because Dennis has already made four unsuccessful attempts to plead plausible claims, the Court concludes that further amendment would be futile. The Court therefore dismisses the claims against [the city of] Arvada with prejudice.") (citing *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991)).

II.    **State Law Claims**

The court's jurisdiction over this case was based on its federal question jurisdiction. In addition to those federal claims, which the court now dismisses in their entirety, Plaintiff seeks relief under various Colorado criminal and civil statutes. ECF No. 33 at 19-26 (Claims 44-47).

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court, however, "may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)) (emphasis added); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Having dismissed all of Plaintiff's federal claims, the court, in its discretion, declines under § 1367(c)(3) to exercise supplemental jurisdiction over the remaining state law claims in Claims 44-47.[7] *Cf. United Mine Workers*, 383 U.S. at 726 ("Needless decisions of state law

---

[7] While not determinative of the jurisdictional analysis, the court has significant reason to doubt that Plaintiff raises any viable state law claim under these Colorado statutes, none of which

18

should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.”); *Board of County Comm'rs v. Geringer*, 297 F.3d 1108, 1115 n.6 (10th Cir. 2002) (“district courts should dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial”) (citations omitted). The state law claims are accordingly **dismissed without prejudice**.

## CONCLUSION

Consistent with the foregoing analysis, it is respectfully

**ORDERED** that Defendants City & County of Denver, Marc-Luca Conley, and Kodi Olson's Motion to Dismiss Second Amended Complaint (ECF No. 38) is **GRANTED**. It is further

**ORDERED** that the claims brought against Marc-Luca Conley and Kodi Olson in their individual capacities under 42 U.S.C. § 1983 for monetary damages are **DISMISSED with prejudice**. It is further

**ORDERED** that the 42 U.S.C. § 1983 claims against the City and County of Denver, and the claims brought against Marc-Luca Conley and Kodi Olson in their official capacities, are **DISMISSED with prejudice**. It is further

---

provide for a private right of action. *See, e.g.*, *Martinez v. Paul Novak Agency for Allstate Ins.*, No. 20CA1981, 2022 WL 22928041, at *9 (Colo. App. June 16, 2022) (“[C]riminal statutes that impose only criminal penalties . . . do not provide a basis for a private cause of action.”). Regardless, having now dismissed the federal claims and therefore appropriately declining jurisdiction over the state law claims, the court makes no determination concerning the merits of the state claims.

ORDERED that the court declines supplemental jurisdiction over Plaintiff's state law claims and that those claims are **DISMISSED without prejudice**. It is further

ORDERED that this case is **DISMISSED in its entirety**. It is further

ORDERED that this case is closed.

DATED: April 6, 2026                      BY THE COURT:

_____
Susan Prose
United States Magistrate Judge